IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDRE JACOBS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-514 |
| | ) | |
| v. | ) | Judge Joy Flowers Conti |
| | ) | Magistrate Judge Caiazza |
| JEFFREY A. BEARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Defendants' Motions to Dismiss (Docs. 84, 86, 97) be converted into motions for summary judgment, and that they be granted.

**II. REPORT**

Andre Jacobs ("Jacobs" or "the Plaintiff") is a state prisoner presently incarcerated at the Allegheny County Jail who has filed this pro se civil rights action against forty-four (44) named defendants[1]. His Amended Complaint (Doc. 83) is in ten counts, and contains allegations that his constitutional rights were violated while he was incarcerated at the State Correctional Institutions at Pittsburgh and Fayette. All named Defendants have filed Motions to Dismiss (Docs. 84, 86, 97) which assert that the Plaintiff's claims are barred by the applicable statute

---

1. Nine (9) named defendants have already been dismissed from this action.

of limitations, since the latest date set out in the Amended Complaint is June, 2004, and this action was not filed until April 19, 2007, well beyond the two-year statute of limitations. Jacobs has responded to the Motions (Docs. 95, 96, 101 and 102), and argues that the limitations period was equitably tolled in this case, making his claims timely.

A. **The Amended Complaint**.

Jacobs alleges that he was improperly placed in the Long Term Segregation Unit ("LTSU") at the State Correctional Institution at Fayette ("SCI-Fayette") in 2001, and that he has remained in segregated confinement since that time. In Count I of the Amended Complaint, Jacobs asserts that he has been subjected to "mentally ill" prisoners in adjacent cells in the LTSU, that he has been denied some items of personal property in his cell, and that the guards exhibit "intensified hostility" to prisoners in the LTSU (Doc. 83, ¶¶ 77-83). Jacobs asserts that he complained to the Superintendent concerning the limitations on personal property in 2003 (¶83). Count II details an alleged assault which occurred in June, 2003, and the subsequent destruction of documents which evidenced the assault (¶¶ 85-107). Count III contains allegations claiming that Jacobs was denied medications in June, 2003 (¶¶ 108-113). In Count IV, Jacobs alleges that certain named Defendants filed false misconduct charges against him during June, 2003 (¶¶ 114-123). Count V

contains allegations that Jacobs' attempts to file a grievance were obstructed in June, 2003, as was his ability to pursue a then-pending civil rights action in federal court (¶¶ 124-142). Jacobs alleges in Count VI that he was denied dental care, x-rays and eye exams in the months preceding a September, 2003 grievance he filed, and that he was denied appropriate medical care through December, 2003 (¶¶ 143-161). Count VII recounts difficulties which Jacobs encountered in obtaining copies during his litigation against Stalite, Inc., regarding "a business transaction" (¶¶ 162-171). This allegedly occurred in October and November, 2003. The allegations in Count VIII also focus upon alleged unconstitutional activities occurring in September, 2003, (¶¶ 172-183). More specifically, Jacobs alleges that he was treated with medications in an experimental fashion, and that defendants Kolli and Saavedra have conspired to keep him in the LTSU by making statements concerning his mental health, sometimes to "unqualified persons" (¶ 180). In Count IX, Jacobs asserts that he was placed in "four-point restraints" by Defendant Saavedra and injected with Haldol in June, 2004, and that his medication was discontinued by Saavedra in retaliation for Jacobs filing a grievance (¶¶184-203).

Count X of the Amended Complaint contains the Plaintiff's allegations that address the statute of limitations issues. Jacobs asserts that he has been subjected to "continuing wrongs,"

and that the Defendants have engaged in fraudulent concealment (¶ 205). He also asserts that he has been diligent in presenting his claims, but that he has been subjected to harassment, intimidation and the destruction of his personal property (¶206). The Plaintiff asserts that his legal mail has been lost or destroyed on several occasions, but that "most hampering of all" has been the limitations on personal property and access to a law library occasioned by his placement in the LTSU (¶209).

**B.    The Plaintiff's Exhibits.**

In response to Defendant Kolli's Motion, Jacobs provides an affidavit in which he details the alleged unconstitutional actions of the Defendants. He states that all of the actions allegedly taken by Defendant Kolli occurred prior to January, 2004 (Doc. 96, Ex. A). Jacobs provides the following affidavit evidence concerning the timeliness of his Complaint:

> I was, at all times, diligent in presenting the claims herein, being faced with a number of obstructions along the way, including, destruction of related property, refusal to process grievances by prison officials, Defendants' own policy restricting inmate property, destruction of incoming and outgoing mail, and total denial of access to a law library; on one occasion for a period of 14 months. Further, Defendants Kolli, Poindexter and Lapina fraudulently/continually concealed the true nature of my injuries, making them unknown to me. My true injuries/illnesses were re-varified [sic] in 2005, 2006, respectively.

(Doc. 96, Ex. A, ¶17). Jacobs then refers to his Exhibits I, J and K. Ex. I is a letter Jacobs wrote to the United States

Postal Service in June, 2004, complaining of beatings, denial of food, and destruction of incoming and outgoing mail. Also attached is the June 24, 2004 response thereto advising Jacobs that the Postal Service has no jurisdiction in the matter. Exhibit J is a letter to the Clerk of Courts for the United States District Court for the Western District of Pennsylvania dated May 28, 2005. In his handwritten letter, the Plaintiff states that he has claims to file, and that the statute of limitations is about expire on those actions, but that he has been prevented from commencing lawsuits by prison authorities who have been withholding his legal property. Finally, Exhibit K is a letter to Jacobs from the Office of the Federal Public Defender dated July 7, 2005, informing Jacobs that if he wants his legal files forwarded from SCI-Fayette to the Allegheny County Jail, he need only address a letter to his counselor at SCI-Fayette requesting that the files be forwarded.

Jacobs has also provided a declaration and attached exhibits in opposition to Defendant Saavedra's Motion to Dismiss. He asserts that Saavedra has been his psychiatrist since January, 2004 (Doc. 102, Ex. A, ¶7). Dr. Saavedra is alleged to have treated Jacobs with anti-psychotic medications, while at the same time representing to prison officials that the Plaintiff has no mental illness. Jacobs alleges that he did not discover this subterfuge by Saavedra until August, 2005, when he obtained his

prison mental health records during criminal proceedings (Id., ¶8). Jacobs states that he was placed in four-way restraints and involuntary injected with anti-psychotic drugs by Dr. Saavedra on June 19, 2004. He filed a grievance concerning these events (Id., ¶¶9-10). Jacobs asserts that he filed "over one hundred" grievances concerning obstruction of his right to grieve, a lack of access to his personal legal materials, and the alleged destruction of his legal mail during the relevant time period (Id., ¶13). Attached as Exhibit M is a response from the Clerk of Courts to Jacobs' May, 2005 "Notice" that he intended to sue in which Jacobs is informed that the notice is being returned to him since it is not in the proper form, and since it is not a "filing". Also part of Exhibit M is a "Plaintiff's Notice of Intent to Sue" dated June 16, 2006, but bearing no indication that it was ever sent. Nonetheless, Jacobs states therein that he has claims to present concerning constitutional violations which occurred in June, 2004, and that the statute of limitations is about to expire, but that he has not been able to prepare a complaint because the Defendants have obstructed his ability to prepare one.

C. **The Legal Standard**.

The Defendants have filed Motions to Dismiss, asserting that the allegations of the Amended Complaint make clear that the claims are untimely. Jacobs has responded to this Motion by

presenting evidence in the form of an affidavit and a declaration, with numerous attached exhibits. Because there are now several matters outside of the pleadings presented to the Court, the Motions to Dismiss will be treated as Motions for Summary Judgment. <u>See</u>, Federal Rule of Civil Procedure 12(b) ("If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."). Jacobs has already taken the opportunity to present evidence relevant to a motion for summary judgment. If, however, he has other affidavit evidence or exhibits to offer, he may submit those to the Court by way of objections to this Report and Recommendation.

Jacobs' burden in response to a well-pleaded motion for summary judgment is to present "specific facts showing that there is a *genuine issue for trial* . . . or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law". <u>Matsushita Elec. Ind. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)(internal citation and quotation omitted, emphasis added). Here, the Defendants assert that all of Jacobs' claims are barred by the applicable statute

of limitations.  Hence, Jacobs' burden is to present facts from which a court can conclude that there is a genuine issue of fact with respect to the timeliness of his claims.

D.  **The Analysis**.

The federal statute upon which Jacobs has grounded his Amended Complaint -42 U.S.C. § 1983- does not contain any limitations period for filing civil rights actions.  Instead, the limitations period for actions brought under section 1983 is determined by state law. <u>Wilson v. Garcia</u>, 471 U.S. 261, 272-76 (1985).  The applicable limitations period under Pennsylvania law for civil rights actions asserted under 42 U.S.C. §1983 is two years.  See 42 Pa. Cons. Stat. § 5524<u>; Epps v. City of Pittsburgh</u>, 33 F.Supp.2d 409 (W.D.Pa.1998).

The date when a section 1983 claim accrues is a matter of federal law.  <u>Albright v. Oliver</u>, 510 U.S. 266, 280 n.6 (1994) (J. Ginsburg, concurring).  A claim accrues when the plaintiff knew or had reason to know of the injury.  Thus, the date when the plaintiff becomes aware, or should have become aware, of both the fact of injury and its causal connection to the defendant, triggers the limitations period.  See Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (it is the wrongful act that triggers the start of the limitations period); <u>Keystone Ins. Co. v. Houghton</u>, 863 F.2d 1125, 1127 (3d Cir. 1988) (a federal cause of action accrues when the plaintiff is aware, or should be

aware, of the existence of and source of injury, not when the potential claimant knows or should know that the injury constitutes a legal wrong). That being said, Jacobs would have had two years measuring from the date of the events complained of in his Amended Complaint to file his claims. As already indicated, the latest date referenced in the Amended Complaint with respect to any claim is June, 2004. All of the Plaintiff's claims are untimely.

### 1. **The Continuing Violation Doctrine**.

Jacobs first asserts that his claims are part of a "continuing violation" of his rights. To establish a continuing violation a plaintiff must show that: 1) there was at least one violation occurring within the statute of limitations period and 2) that the Defendants' actions were "more than an occurrence of isolated or sporadic acts[.]" Soppick v. Borough of West Conshohocken, 118 Fed.Appx. 631, 635 (3d Cir. 2004); West v. Philadelphia Electric Co., 45 F.3d 744, 745 (3d Cir. 1995). Here, the continuing violation doctrine would allow Jacobs to recover for all conduct which was part of a single episode of ongoing wrongdoing, so long as his Complaint was filed within two years, even if earlier acts that comprised the single episode occurred outside the statutory limitations period. However, the doctrine requires that a complaint be filed within the statute of limitations period as calculated from the *last tortious act*.

See, e.g., Ratts v. Board of County Com'rs, Harvey County, KS, 141 F.Supp.2d 1289, 1300 (D. Kan. 2001) ("For the doctrine to apply, [the plaintiff] must first demonstrate at least one incident of harassment, which occurred *within the statutory period* . . . .") (emphasis added); Doe v. Blake, 809 F.Supp. 1020, 1025 (D. Conn. 1992)("Under this [continuing violation] theory , where the last act alleged to be part of the ongoing pattern of discrimination occurs *within the filing period*, allegations regarding earlier acts are not time-barred.") (emphasis added).

In determining whether the first prong of the "continuing violation" theory is met, "the crucial question is whether any present violation exists." United Airlines, Inc. v. Evans, 431 U.S. 553, 558 (1977).[2] Put another way, and in the context of responding to a summary judgment motion, Jacobs must present some affirmative evidence showing that constitutional harm occurred within the limitations period, *i.e.*, on or after April 19, 2005. Jacobs has failed to meet that burden. In detailed affidavits, Jacobs recounts all of the events forming the basis of his claim,

---

2. See also, Ratts v. Board of County Com'rs, Harvey County, KS, 141 F.Supp.2d 1289, 1300 (D. Kan. 2001) ("For the doctrine to apply, [the plaintiff] must first demonstrate at least one incident of harassment, which occurred *within the statutory period* . . . .")(emphasis added); Doe v. Blake, 809 F.Supp. 1020, 1025 (D. Conn. 1992)("Under this [continuing violation] theory, where the last act alleged to be part of the ongoing pattern of discrimination occurs *within the filing period*, allegations regarding earlier acts are not time-barred.") (emphasis added).

and sets out the dates of these events. Significantly, all relevant events occurred in 2003 and 2004. In fact, Jacobs' argument is nothing more than a mention of the continuing violation doctrine, with no factual support; the continuing violation doctrine is inapplicable here since no events occurred within the limitations period.

Further, the second prong of the continuing violation doctrine test is likewise fatal to Jacobs' claims. His action cannot be saved from the time bar unless the events complained of were based on more than "isolated or sporadic acts." West, 45 F.3d at 745. The court must consider whether the acts set out in Jacobs' Amended Complaint were similar in nature, the frequency of such acts, and their permanency, *i.e.*, "whether the nature of the violations should trigger the [plaintiff's] awareness of the need to assert [his] rights . . . ." Berry v. Board of Supervisors of Louisiana State University, 715 F.2d 971, 981 (5th Cir. 1983). Here, Jacobs cannot satisfy the second part of the continuing violation doctrine because the acts he asserts, *e.g.*, such as being placed in four-point restraints, being improperly placed in the LTSU, being assaulted, are "isolated or sporadic act[s]" and not part of a "continuing violation" of his constitutional rights because each is a discrete instance of a constitutional violation. "[C]auses of action that can be brought individually expire with the applicable limitations period." O'Connor v. City

of Newark, 440 F.3d 125, 128 (3d Cir. 2006). The "cumulative violation" doctrine is applicable only when a course of conduct includes incidents which are, themselves, not actionable. Id. As the Supreme Court made clear in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), "discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." Id. at 113. Rather, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Id. Here, Jacobs sets out a myriad of claims relating to his incarceration, but they all occurred long before April 19, 2005, and were actionable when they occurred. Hence, Jacobs cannot merely assert that these violations were continuing in nature, and those claims are not exempted from the statute of limitations.

E. **Equitable Tolling**.

Jacobs also asserts that he is entitled to equitable tolling of the limitations period both because the Defendants fraudulently concealed facts concerning his claims, and because his ability to file his claims was obstructed. Federal courts may toll statutes of limitations for federal laws where the plaintiff "in some extraordinary way has been prevented from asserting his or her rights." Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir.1997). Equitable tolling is appropriate in three instances:

>     (1) where a defendant actively misleads a
>     plaintiff with respect to h[is] cause of action;
>     (2) where the plaintiff has been prevented from
>     asserting h[is] claim as a result of other
>     extraordinary circumstances; or (3) where the
>     plaintiff asserts h[is] claims in a timely manner
>     but has done so in the wrong forum.

Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000).

Jacobs asserts that Defendant Saavedra concealed from him the fact that Saavedra was treating him for a mental problem, but was simultaneously indicating to prison authorities that Jacobs had no mental health issues. This claim is addressed to Jacobs' LTSU placement, a claim he grieved repeatedly and which he believed to be unwarranted from the outset. Hence, even if true, Saavedra's actions did not mislead the Plaintiff into believing he did not have a constitutional claim concerning his placement in the LTSU. Further, Jacobs himself asserts that he knew in 2005 and 2006 that he had constitutional claims to raise and that the statute of limitations on those claims would expire shortly. He asserts that he sent to the Court two "Notices" of his intent to sue, one in May, 2005, and the other in June, 2006. These "Notices" are clear evidence that Jacobs was aware of his claims, and that he was not misled with respect to their existence.

Jacobs also asserts that restrictions on his ability to file grievances, restrictions on his access to the law library, and the destruction of incoming and outgoing legal mail prevented him

from timely pursuing his claims.³ First, Jacobs himself asserts that he filed "more than 100 grievances" during the time period at issue. Hence, he was not prevented from filing grievances and, even if he were, this would not have prevented him from seeking relief in this Court, i.e., filing a complaint within two years of the event in question.

Further, to the extent that Jacobs claims to have been prevented from filing a complaint in this case through a lack of law library time, or the failure of the prison to forward outgoing mail, the court must acknowledge that Jacobs has been an active, in fact a prolific, litigant in this Court for the entire time period at issue.⁴ Relatedly, he has maintained constant contact with this Court by mail since 2002, as evidenced by a virtually constant stream of pleadings filed in at least four cases which were pending before this Court between 2002 and 2006.⁵ Jacobs' claims that his access to the Courts was impeded in any fashion is not credible considering the dozens of pleadings actually received by this Court, from Jacobs, in four

---

3. Jacobs' factual allegations span the time period from 2001 through June, 2004. At issue, then, would be his ability to file claims from 2003 through June, 2006.

4. It is proper for a court to take judicial notice of facts not reasonably subject to dispute, Fed.R.Evid. 201(b), so long as the *source* is not reasonably subject to dispute. Id. 201(b). Victaulic Co. v. Tieman, ___ F.3d ___, 2007 WL 2389795 *6 (3d Cir. 2007). There can be no reasonable dispute concerning the public dockets maintained in this Court.

5. See, Civil Action Nos. 02-1703, 04-1365, 04-1366, 04-1592.

other cases filed against state actors.

In summary, all of the claims raised by Jacobs accrued, at the latest, in June, 2004. His Complaint was filed in April, 2007, and is untimely. Jacobs is not entitled to the benefit of the continuing violation theory, nor is he entitled to equitable tolling of the limitations period. The Motions to Dismiss should, because of Jacobs' submissions, be converted into Motions for Summary Judgment and be granted.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by May 5, 2008. Responses to objections are due by May 15, 2008.

| | |
|---|---|
| April 18, 2008 | s/Francis X. Caiazza<br>Francis X. Caiazza<br>United States Magistrate Judge |

cc:
ANDRE JACOBS
125883
Allegheny County Jail
950 2nd Ave.
Pittsburgh, PA 15219