IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANDRE JACOBS,                       )
                                    )
        Plaintiff,                   )       Civil Action No. 07-514
                                    )
v.                                  )       Judge Joy Flowers Conti
                                    )       Magistrate Judge Bissoon
JEFFREY A. BEARD, *et al.*,          )
                                    )
        Defendants.                  )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Motions for Summary Judgment filed by Defendant Kolli (Doc. 175) and Defendant Saavedra (Doc. 178) be granted.

### II. REPORT

This is a prisoner civil rights action in which all Defendants, with the exception of two prison physicians -- Drs. Kolli and Saavedra -- have been granted summary judgment on the basis of the statute of limitations. Defendants Kolli and Saavedra now move for summary judgment (Docs. 175, 178). Plaintiff has responded to the motions, and they are ripe for disposition.

**A.      Legal Standard**

A party's burden in response to a well-pleaded motion for summary judgment is to present ". . . specific facts showing that there is a *genuine issue for trial*" Fed. Rule Civ. Proc. 56(e) (emphasis added), or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242

(1986). The inquiry involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., at 251-52.

**B.     Analysis**

    **1.     The Amended Complaint**

Plaintiff alleges in his Amended Complaint (Doc. 157) that Dr. Kolli prescribed him "depression and anti-psychotic drugs" in 2003, and that Dr. Saavedra provided similar drugs to him in 2004 (Doc. 157, p. 2). Plaintiff states that his complaint arises from his continued housing in the Long Term Segregation Unit ("LTSU") while in Defendant Kolli's care from June, 2003, through January, 2004, and then under Defendant Saavedra's care from January, 2004, through January, 2007 (Id., p. 4).

Plaintiff alleges that he was placed in the LTSU at SCI-Pittsburgh on May 21, 2003, and that this was improper under Pennsylvania Department of Corrections regulations because he had a "significant mental health history." (Id., p. 5). Plaintiff alleges that the LTSU "uses experimental punishment and psychological methods to breed homosexuals and snitches" and that prisoners are forced to take drugs (Id.). Defendants Kolli and Saavedra allegedly "condoned housing [Plaintiff] under these conditions knowing that [he] was mentally ill and psychologically vulnerable" (Id., p. 6). They are also alleged to have assisted other prison personnel in retaliating against Plaintiff by classifying him as a "faker" and by "deliberately underdiagnos[ing]" Plaintiff's condition (Id., pp. 6-7). Defendants Kolli and Saavedra are alleged to have ignored the unhealthy conditions of Plaintiff's confinement, and to have divulged confidential medical information by speaking to Plaintiff through his cell door about his medical records (Id., p. 8).

Plaintiff alleges that Defendant Saavedra ordered that he be placed in four-way restraints on June 19, 2004, kept him in those restraints for three days, and involuntarily injected him with Haldol after Plaintiff set off the water sprinkler in his cell (Id., pp. 8-9). The latest factual averment in the Amended Complaint is Plaintiff's assertion that another inmate set off the sprinkler in his cell in August, 2004, but that inmate was only placed in an observation cell after the incident (Id., p. 9). Plaintiff asked Defendant Saavedra why he was being "singled out" and Saavedra allegedly told Plaintiff that he was "nothing but a lab-rat" (Id., pp. 9-10).

Plaintiff alleges that Defendants Kolli and Saavedra: (1) violated his due process rights by providing him medical treatment different than that ordered by the sentencing judge (Count I); (2) discriminated against him by denying him treatment given to other inmates (Count II); (3) were deliberately indifferent to his medical needs in allowing him to be housed in conditions that exacerbated his mental illness (Count III); (4) treated him with antipsychotic drugs for research purposes (Count IV); (5) violated the Eighth Amendment by erroneously diagnosing Plaintiff's mental condition to intentionally deprive him of adequate treatment (Count V); (6) were deliberately indifferent to his medical needs by knowingly housing him near mentally disturbed prisoners (Count VI); (7) made false entries in confidential medical files (Count VII); and manipulated Plaintiff into participating in the LTSU "experiment" (Count X). Plaintiff also alleges that Defendant Saavedra subjected him to cruel and unusual punishment when he ordered Plaintiff injected with Haldol (Counts VIII and IX); and that all of these allegations also support state law tort claims for medical and professional negligence. (Doc. 157, pp. 10-13).

## 2. Statute of Limitations

Defendants Kolli and Saavedra first assert that Plaintiff's claims are barred by the applicable limitations period. The limitations period for actions brought under Section 1983 is determined by state law. Wilson v. Garcia, 471 U.S. 261, 272-76 (1985). Pennsylvania applies a two-year statute of limitations to civil rights actions brought pursuant Section 1983. 42 Pa. Cons. Stat. § 5524; Epps v. City of Pittsburgh, 33 F.Supp.2d 409 (W.D. Pa. 1998). The Complaint was received by the Court on April 19, 2007, and is dated March 1, 2007. As set forth in more detail above, Defendant Kolli is alleged to have treated Plaintiff during 2003 and 2004, and the latest factual allegation concerning Defendant Saavedra relates to an incident that occurred in June, 2004. Thus, absent some reason to toll the limitations period, Plaintiff's claims are untimely.

This is not the first time that the Court has considered the timeliness of Plaintiff's claims. The Court granted summary judgment to all Defendants on the basis of the statute of limitations because all of the alleged unconstitutional conduct occurred in 2003 and 2004 (Doc. 104). The Court then granted a motion for reconsideration with respect to Defendants Kolli and Saavedra on the following basis:

> Jacobs asserts that he has additional evidence with respect to only defendants Saavedra and Kolli. He argues the records relating to his claims against defendants Saavedra and Kolli were not turned over to him until August 2005. Whether the statute of limitations would be tolled if that allegation is true was not considered by the magistrate judge.

(Doc. 119, p. 3).

Plaintiff makes two arguments based upon his August, 2005 review of his medical records. First, he asserts that he is entitled to the benefit of the discovery doctrine under Pennyslvania law. Second, Plaintiff argues, in the alternative, that Defendants Kolli and

Saavedra fraudulently concealed his true medical condition from him, as well as the nature of the treatment he was being provided, and that this entitles him to equitably toll the statute of limitations with respect to his claims.

A federal court relying upon a state statute of limitations also must apply the state's tolling principles. Weis-Buy Servs. v. Paglia, 411 F.3d 415, 422 (3d Cir. 2005). Under Pennsylvania law, the statute of limitations does not begin to run until a plaintiff has discovered, or, through the exercise of reasonable diligence should have discovered, an injury and its cause. Beauty Time, Inc. v. VU Skin Sys., Inc., 118 F.3d 140, 144 (3d Cir. 1997). The statute of limitations also is tolled when "through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from the right of inquiry." Bohus v. Beloff, 950 F.2d 919, 925 (3d Cir. 1991) (quoting Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 556 (3d Cir. 1985)). The "fraudulent concealment" exception applies only where the Defendant engages in "an affirmative and independent act of concealment that would divert or mislead the plaintiff from discovering the injury." Id. Fraudulent concealment tolls the limitations period until the plaintiff knew or, using reasonable diligence, should have known of the claim. Id., at 925-26.

Both the discovery rule and the doctrine of fraudulent concealment require the Court to determine if Plaintiff has exercised reasonable diligence. Reasonable diligence for purposes of the discovery rule, and for purposes of equitable tolling, is an objective standard. Kingston Coal Co. v. Felton Min. Co., Inc., 456 Pa.Super. 270, 690 A.2d 284, 289 (1997). "The question of due diligence in discovering an injury, as it relates to a statute of limitations defense, is usually one for a jury's consideration. However, where the facts are so clear that reasonable minds cannot differ as to whether the plaintiff should reasonably be aware that he has suffered an injury, the determination as to when the limitations period commences may be made as a matter of law."

Id. at 288. Pennsylvania courts have held that "where information is available, the failure of a plaintiff to make the proper inquiries is a failure to exercise reasonable diligence as a matter of law." Id. at 289. Here, Jacobs was aware of, or through the exercise of reasonable diligence should have been aware of, all relevant facts concerning Defendant Saavedra's and Defendant Kolli's alleged actions at the latest in June, 2004, and his claims are barred by the statute of limitations.

With respect to Count I, Jacobs knew prior to his placement in the LTSU in 2003 that his sentencing judge ordered "comprehensive treatment" for Jacobs's pre-existing mental condition, and he knew what Defendant Kolli repeatedly told him that he did not have a treatable condition (Doc. 195-1, p. 12). Therefore, Plaintiff did not need to review his medical records in August, 2005, in order to discover whether he was being given treatment consistent with the sentencing judge's order. In addition, Plaintiff has provided an affidavit in which he asserts that he complained to Defendant Kolli repeatedly about the conditions in the LTSU in 2003 and 2004 (Doc. 195-1, p. 2). Defendant Kolli allegedly told Plaintiff he was "okay" and did not need medication when Plaintiff complained of depression, but Defendant Kolli is alleged to have responded to Plaintiff's report of suicidal ideation by ordering that Plaintiff be "stripped naked" and "made to wear a female dress" in a room equipped for video (Doc. 195-1, p. 2). Plaintiff states further that he questioned his placement in the LTSU in 2003, and that he informed Defendant Kolli that the "noise, lack of treatment, isolation and atmosphere of terror and intimidation" frightened him, but that Defendant Kolli "ignored" his complaints and "invalidated" his claim (Doc. 195-1, pp. 3-4). Jacobs's claim that he was unaware that he was not afforded "proper medical treatment" by Dr. Kolli is unsustainable in light of these allegations.

Moreover, Plaintiff is not entitled to the benefit of the discovery rule because he actually did discover, or should have discovered, both his injury (the lack of appropriate medical treatment) and its cause (Defendants' Kolli and Saavedra alleged refusal to give him appropriate treatment) in 2003 and 2004 when those Defendants were his physicians. This same finding also defeats Plaintiff's claim of fraudulent concealment because Plaintiff has not identified any information kept from him by Defendants that would have prevented him from determining if he was being given appropriate medical care.

Plaintiff alleges in Count II that other inmates were given treatment that he was denied. Defendants have moved for summary judgment asserting that the statute of limitations bars Plaintiff's claims, and it is now his duty to come forward with evidence that his claims fall within the limitations period. He has not done so. Plaintiff does not identify any information he discovered in his medical file in August, 2005, that would not otherwise have been available to him prior to that time. A claim of fraudulent concealment fails for the same reason.

Count III is time-barred because Plaintiff clearly was aware of his claim that his LTSU placement was improper in 2003, because he complained about his placement at that time to Defendant Kolli. Plaintiff's claim that he was unaware of facts necessary for him to discover the effect that the LTSU had on him is defeated by his own affidavit (Doc. 195-1). In fact, Plaintiff alleges that Defendant Kolli (whose treatment of Plaintiff ceased in January, 2004) punished him for reporting mental problems that were allegedly aggravated by his placement in the LTSU. Therefore, the record firmly establishes that Plaintiff was aware of his injuries, and the source thereof, in 2003 or, at the latest, 2004, and he cannot establish that he first "discovered" his claims in August, 2005, or that those claims were fraudulently concealed from him until that time.

As for Count IV, Plaintiff alleges that he was treated with antipsychotic medications for "research purposes." The Court views this as an Eighth Amendment claim that Defendants were deliberately indifferent to his serious medical needs. However, Plaintiff concedes that he was given various medications by Defendants Kolli and Saavedra, and that his request to discontinue such medications was honored by Defendants each time he asked. It is difficult to discern how Plaintiff could not have been aware, at the time he was given medications, whether or not he had a claim for deliberate indifference. Plaintiff knew he was given medications, and he knew that they were not working. Thus, to the extent that Plaintiff alleges that Defendants Kolli and Saavedra denied him medical care, Plaintiff had notice of that injury, and its source, when the medications were prescribed or shortly thereafter, meaning that Plaintiff's claims accrued in 2003 or 2004 (the last date of an alleged incident is June, 2004), and they are untimely. As for his claim of "experimentation" by Defendants Kolli and Saavedra, Plaintiff alleges that he complained to Defendant Saavedra about his treatment, and Defendant Saavedra is alleged to have responded that Jacobs complains too much and is "just a lab rat" (Doc. 157, p. 9-10). It is difficult to discern how a prisoner treated in such a fashion by medical personnel is not on notice of his injury (denial of appropriate medical care) or its source (a physician telling him he complains too much and is a "lab rat"). Accepting Plaintiff's own allegations as true, no relevant fact was withheld from Plaintiff, and he should have been aware of his claim of "experimentation" in 2004. This claim, too, is untimely and is not saved by either the discovery rule or the doctrine of fraudulent concealment.

Plaintiff alleges in Count V that Defendants "intentionally misdiagnosed" his mental condition to keep him in the LTSU. Again, Plaintiff complained about his placement in the LTSU as early as 2003. He was aware that Defendants Saavedra and Kolli were treating him (or

refusing to treat him) for his mental condition. As the contents of Plaintiff's latest affidavit make clear, Plaintiff disagreed with Defendant Kolli's treatment plan in 2003 (a plan Defendant Saavedra is alleged to have "rubber stamped" upon becoming Plaintiff's treating psychiatrist in January, 2004). A claim that Plaintiff was "misdiagnosed" was available to him long before August, 2005, and he has not identified any relevant information that was either unavailable to him until that time (discovery rule) or that was concealed from him (fraudulent concealment). This claim is untimely.

Plaintiff alleges in Count VI that Defendants were deliberately indifferent to his medical needs by knowingly housing him near mentally disturbed prisoners. Again, Plaintiff was aware of and complained about the mental condition of other LTSU prisoners from the time he was first placed in the LTSU in 2003. Further, to the extent that Plaintiff is alleging that his placement amounts to a denial of necessary medical care, Plaintiff clearly was aware during 2003 and 2004 that Defendants Kolli and Saavedra were not acting to remedy his placement in the LTSU. Therefore, any claim that Defendants failed to meet his medical needs by not removing him from the LTSU accrued in 2003 or 2004, and Plaintiff has not identified any information that was withheld from him that would have prevented him from discovering his claim.

Plaintiff's claim that false entries were made in confidential medical files, Count VII, does not, of itself, state a claim because there is no constitutional right that the Court can discern to have "accurate" medical files. Plaintiff's claim is, in reality, that false entries were made to maintain his placement in the LTSU. The false entries are, allegedly, that Plaintiff did not have a mental condition preventing him from being housed in the LTSU. Plaintiff, however, knew that he had been placed in the LTSU despite his previously-diagnosed mental condition, and he knew that Defendants Kolli and Saavedra ignored his complaints about the conditions in the LTSU.

9

Again, Plaintiff possessed **all** information relevant to his injury and its source during 2003 and 2004, and his claim accrued at the latest in 2004. No relevant fact was withheld from Plaintiff, defeating his fraudulent concealment argument.

Plaintiff's claims in Counts VIII and IX are premised upon Defendant Saavedra having placing him in restraints and injecting him with Haldol on June 19, 2004. These claims clearly are untimely because Plaintiff needed no other information to put him on notice of his claims than his own observations that same date.

Lastly, Plaintiff alleges that he was manipulated into participating in the LTSU "experiment" by Defendants (Count X). Again, Jacobs knew all that he needed to know in order to "discover" whether or not his placement in the LTSU was improper, and whether Defendants Saavedra and Kolli had some part in that decision, in 2003 and 2004. Jacobs knew at that time, because he complained to Defendant Kolli, that his mental condition should have prevented him from such a placement. Nothing that Plaintiff may have learned in August, 2005, was necessary to his discovery of his injury (placement in the LTSU), or its source (his physicians failure to identify his mental condition).

To the extent that Plaintiff is making claims under state tort law for medical malpractice, his claims are likewise barred by the applicable two-year statute of limitations. 42 Pa. Cons.Stat. § 5524(2).

### III. CONCLUSION

It is respectfully recommended that Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (Doc. 22) be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules for Magistrates, objections to this Report and Recommendation

are due by June 8, 2010. Failure to timely file objections may constitute a waiver of any appellate rights.

                                                                                     <u>s/ Cathy Bissoon</u>
                                                                                     Cathy Bissoon
                                                                                     United States Magistrate Judge

Date: May 25, 2010

cc:
**ANDRE JACOBS**
DQ5437
SCI Coal Township
1 Kelley Drive
Coal Township, PA 17866